## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**DAVID WEIK**,

                                Case No.  **14-61298-13**

                Debtor.

## MEMORANDUM OF DECISION

At Butte in said District this 24th day of February, 2015.

In this Chapter 13 bankruptcy case two matters are pending:  (1) Confirmation of the Debtor's Chapter 13 Plan and objections thereto filed by the Chapter 13 Trustee; and (2) the Trustee's Motion to Dismiss with Prejudice and a two-year prohibition against refiling due to Debtor's lack of eligibility, abuse of the bankruptcy process, and lack of good faith (Document No. 6), and Debtor's opposition thereto.  A hearing on these matters was held after due notice at Missoula on February 5, 2015.  The Debtor David Weik ("Weik" or "Debtor") appeared pro se and testified.  The Chapter 13 Trustee Robert G. Drummond appeared and testified, and called witness Regina Spaeth ("Spaeth") of Tucson, Arizona, to testify.  Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, A, B, C, D, and E, all were admitted into evidence without objection.  In addition the Court took judicial notice of several case dockets involving Weik in Arizona and Montana.  At the conclusion of the parties' cases-in-chief the Court closed the record and took both matters under advisement.  After review of the record and applicable law, this matter is ready for decision.  For the reasons set forth below the Court denies confirmation and will grant the Chapter 13 Trustee's Motion to Dismiss with Prejudice, and a two-year

1

prohibition against Weik refiling for bankruptcy relief in any district.

This Court has exclusive jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a). These pending matters are core proceeding under 28 U.S.C. § 157(b)(2) regarding confirmation of the Debtor's Plan and administration of this case.  This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS

Debtor David Weik lives in Missoula, where he employed in the temporary employment business as a staffer.  He also sometimes operates a business corporation, of which he testified he is the owner, which offers horseback trail rides to the public during warm weather.[1]

Weik testified that he has filed bankruptcy cases in Arizona and Montana[2] prior to his filing of the instant Chapter 13 case, including two bankruptcy cases in the State of Texas, two bankruptcy cases in Arizona, and five bankruptcy cases in Montana.[3]  He also is or has been a party in numerous lawsuits in Arizona and Montana.

Ex. 2 and 3 show a chapter 13 case filed by Weik in Arizona, Case No. 04:07-BK-00958, was dismissed on or about July 28, 2010, based upon Weil's delinquency in plan payments.  The Trustee testified that one of Weik's chapter 13 plans was confirmed in his prior cases.  Weik

---

[1]He testified that he did not earn income from his horse trail ride corporation last year because it was involved in litigation.

[2]Weik's prior bankruptcy cases are listed at Document No. 24 as:  Case No. 4:07-bk-00958, JMM, U.S. Bankruptcy Court, District of Arizona; (2) 13-60312-13, U.S. Bankruptcy Court, District of Montana; (3) 13-60850-13 (Bankr. D. Mont); (4) 13-60953-13 (Bankr. D. Mont.); and (5) 13-60994-13 (Bankr. D. Mont.).

[3]Weik testified that one of the bankruptcies he filed in Montana was a chapter 7 and the others were chapter 13 cases.  No discharges were entered in any of them.

filed another chapter 13 case in Arizona, No. 10-28432-TUC-EWH.  The trustee moved to dismiss that case for Weik's delinquency in plan payments.  Weik filed an opposition.  Ex. 6. The bankruptcy court dismissed his second case on February 22, 2012.  Ex. 7.

Regina Spaeth is manager of Midway RV & Self Storage ("Midway") in Tucson, Arizona, where it provides self-storage and parking for the public.  She testified that Weik had a month-to-month storage contract with Midway for three (3) storage units beginning in 2012, and that Weik's property still occupies Midway's 3 units.[4]  Weik's most recent payment to Midway for storage took place in January 2013.  He has not had access to his storage units at Midway since March of 2013.  Spaeth testified that as of January 8, 2015, Weik owed Midway a total of $8,629.75 in rent.  Midway sent Weik default letters.

Spaeth testified that Midway attempted to repossess Weik's belongings and sell them pursuant to Arizona state law in order to pay off Weik's debt to Midway.  In Weik's three most recent bankruptcy cases, Spaeth testified, Weik filed his petition on the date that Midway scheduled an auction sale of his property, thereby staying the sale.  Weik admitted that he filed the petitions evidenced by Ex. 9, 10, and 11 to save his personal property from sale by Midway. Midway received notice of a prior chapter 13 case filed by Weik in March of 2013.  Spaeth testified that case was dismissed.[5]

---

[4]Spaeth testified that Weik moved his belongings into one Midway storage unit and later rented two additional units.

[5]Case No. 13-60994-13 was dismissed on September 6, 2013, after a hearing in which the Court reinstated a previously dismissed case, No. 13-60312-13.  Weik's plan in No. 13-60312-13 was confirmed by order entered on January 27, 2014, with the trustee's consent.  However, 13-60312-13 was dismissed on April 7, 2014, after notice and without objection by Weik after he defaulted in plan payments.

Spaeth testified that during Weik's second Montana bankruptcy case, Midway's area manager identified only as "Cory" offered Weik an opportunity to come and remove his property from Midway's storage units free of charge, but that Weik never showed up.  Midway sent Weik an e-mail in March of 2014, offering to let him pick up his belongings at no charge.  Spaeth testified that Weik told Midway that he would come pick up his belongings by the first of May, 2014, but Weik did not show up[6] and therefore did not perform the conditions Midway required to forgive Weik's storage debt.

Weik testified that Midway sent him correspondence stating that he could come and pick up his things, and that he asked Cory to remove 5 or 6 boxes of his things[7] and sell the rest, but she refused.  Spaeth testified that Weik "may have" asked Midway to set aside certain family heirlooms and sell the rest, but that it is not Midway's normal practice to go through individual items but rather sells them all; Weik was told about Midway's auction process.

Weik filed the instant Chapter 13 petition, pro se, on November 13, 2014.  Spaeth testified that Weik filed his petition, as he did in his previous two bankruptcy cases, on the date scheduled for Midway's auction sale of his personal property.  Weik testified that he did not consult with an attorney or bankruptcy petition preparer prior to filing his petition; he admitted that he filed his petition to save his property at the Midway storage units in Tucson from being sold.

Weik signed his Chapter 13 petition below a declaration which states:  "I declare under

---

[6]Spaeth testified that she had one phone conversation with Cory about Midway's offer to let Weik pick up his items.  Cory asked Spaeth if Weik had gotten in touch.

[7]The things Weik wanted set aside were family heirlooms, books, photographs and pictures, and a toolbox which belonged to his grandfather.

4

penalty of perjury that the information provided in this petition is true and correct." Ex. 11.

However, all information on the petition is not true and correct. At the top of page 2 of the

petition the Debtor was required to list all prior bankruptcy cases filed within the last 8 years.

Although Weik had filed 4 bankruptcy petitions within the last 8 years he left that space blank.

Ex. 11[8]. Weik signed the declaration at the courthouse when he filed the instant petition. He

testified that he knew he was not supposed to lie, but he did not have time to fill out the petition

completely and he did the best he could.

When asked about the omission of his prior bankruptcy cases from his petition, Weik

admitted that he did not list them, but he denied that he intended to deceive. When asked why he

did not list the prior case numbers Weik testified that he did not know the case numbers and did

not have access to a computer. He testified that he spoke with the case manager in the clerk's

office when he went in person to file his petition in the instant case and that she told him she

would fill the prior cases in. Weik asked Drummond about problems pro se debtors have in

chapter 13 cases and Drummond agreed that pro se debtors may have difficulties in chapter 13

cases and some pro se debtors don't prosecute their cases at all.

The Chapter 13 Trustee filed his Motion to Dismiss with Prejudice on November 14,

2014, for lack of eligibility under § 109(g)(1), abuse of the bankruptcy system and lack of good

---

[8]In contrast, Ex. 8 is Weik's petition and Schedules in Case No. 13-60312-13. On Ex. 8
Weik listed under prior bankruptcy cases "District of Arizona" twice, but without case numbers.
Ex. 9 is Weik's petition and schedules in Case No. 13-60994-13. On Ex. 9 Weik listed not only
his prior bankruptcy cases from Arizona and Montana on the petition, but he also listed Midway
as a creditor at Schedule F. Ex. 10 is his petition and schedules in Case No. 14-60953-13. On
Ex. 10 Weik failed to list his prior bankruptcy cases, and failed to list Midway on Schedule F.
He testified that he had plenty of time in filing his bankruptcy cases in Arizona to fill them out
completely, but did not have time when preparing the petition in the instant case.

faith based on his 4 prior bankruptcy cases.

The Notice of commencement of this case was mailed to creditors by the Bankruptcy Notice Center ("BNC") on November 16, 2014.  However, the Notice was not mailed to Midway by the BNC, since Weik did not include Midway in his creditor mailing matrix.[9]  Spaeth testified that Midway did not receive notice of the instant bankruptcy case from the BNC, but that Weik sent Midway a "Notice of Bankruptcy Case Filing," Ex. 14, by facsimile ("FAX") on November 14, 2014.  Ex. 14.  Weik admitted sending Midway the FAX notice in order to save his property from sale.

Debtor filed his Schedules, Statement of Financial Affairs ("SOFA") on December 1, 2014.  Weik signed the SOFA, declaring under penalty of perjury that he read the answers "and that they are true and correct."  There are a number of incorrect entries and omissions on Debtor's Schedules in the instant case.

Midway is not listed as a creditor with a claim in Debtor's Schedules.  Ex. 11.  Schedule B requires the Debtor to list his personal property in several categories or to mark the column labeled "None."  Asked whether he was entitled to pick and choose what to list on his schedules, Weik answered "Yes I did."  Schedule B on Ex. 11, Item 13 requires debtors to itemize stock and interests in incorporated and unincorporated businesses.  Weik marked column "None" at item 13, although he testified that he owns a corporation engaged in the business of selling horseback trail rides to the pubic on horses he personally owns.

Item 21 of Schedule B requires debtors to list other contingent and unliquidated claims of

---

[9]Debtor's mailing matrix filed with Document No. 1 in the case docket lists only two creditors:  Nickel Auto Group of Missoula and Verizon Wireless.

every nature.  Weik marked "x" under column "None."  Weik testified that he did not understand the question at Item 21, and that he listed a lawsuit at item 4 with his household goods and listed a suit against Goldberg in the state district court[10] on his SOFA at question 4.   He also listed a lawsuit under his exemptions at Schedule C.

Item 25 of Schedule B requires a listing of all vehicles.  Weik listed a single axle trailer at item 25 of Schedule B, but he did not list a car he admitted owning which he identified as a 2003 Saturn.  Weik could not explain why he failed to list his car, except that he was trying to sell it, but then he disclosed that he also owns a 1991 longbed dual axle truck.  He testified that he put down what he had read he was supposed to.

Schedule F required Debtor to list all unsecured nonpriority claims.  Weik listed three unsecured claims on Schedule F, but did not list Midway.  Ex. 11.  Although he admitted that he filed the instant petition to save his belongings from foreclosure sale by Midway, he testified that he did not list Midway on Schedule F because "they dismissed the debt" based on the correspondence from Midway, so he believes he does not owe Midway.  Weik testified that he plans to go to Tucson and retrieve his belongings from Midway.

Debtor filed his Plan on Monday, December 1, 2014.  Under F.R.B.P. Rule 3015(b), a debtor shall file a chapter 13 plan within 14 days of the filing of the petition.  Weik testified that 14 days after the date he filed his petition fell on Thanksgiving, Thursday, November 27, 2014, which is a holiday and the clerk's office was closed.

---

[10]Ex. 12 is Weik's amended complaint against Goldberg, et al., in Civil Action No. CV-14-182-M-DLC-JCL in the United States District Court for the District of Montana, Missoula Division.  Weik described the lawsuit as a dispute over ownership of a business.  Weik testified that the federal district court dismissed the lawsuit, and he refiled the complaint in Montana state district court.  Ex. 15.

Debtor's Plan, Ex. C, provides for graduating payments beginning in the amount of $50, then increasing to the amount of $168.08, with a total plan duration of 28 months. Weik testified that he has made two plan payments so far. The only creditor listed in Debtor's Plan is Verizon Wireless, which is to be paid pro rata for a claim in the amount of $3,018.00. The Debtor did not show that he served his Plan on Midway or other parties entitled to notice. He admitted that he did not serve his Plan on Midway.

Debtor's Plan does not identify any creditors with priority claims at paragraph 3e. The Montana Department of Revenue ("MDOR") filed Proof of Claim No. 2 in this case asserting a priority claim for estimated taxes in the amount of $110.78. Claim 2 explains that the tax claim is estimated for Weik's failure to file an original return for tax period ending 12/31/2013. Weik testified that he did not file an individual Montana state tax return for 2013 and he filed a request for extension for tax year 2014. Asked about the omissions in his Schedules and failure to serve his Plan on creditors, Weik testified that he tried as hard as he could to comply with the requirements of the Bankruptcy Code and did his best.

The Chapter 13 Trustee filed objections to confirmation on the grounds it was not filed in good faith, as evidenced by Weik's serial bankruptcy filings, delay, failure to list prior bankruptcy cases, failure to list causes of action and other assets on Schedule B and the SOFA, lack of eligibility, lack of feasibility, failure to file all tax returns due through 2013 and failure to commit all disposable income to fund the Plan. Weik testified that he does not know his current monthly income because he is employed part-time now, but he will be employed full-time soon. His $310 monthly expense for hay is to feed his horses used for his trail ride business.

8

**DISCUSSION**

**I. Confirmation**.

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *(Barnes v. Barnes) In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).  Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title."  Therefore, the Debtor has the burden of proof on all elements of confirmation.  *Meyer v. Hill*, *(In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

The Chapter 13 Trustee's objections to confirmation overlap in part with his Motion to Dismiss with Prejudice; the good faith and eligibility discussion will be discussed more fully in the following section.  As far as MDOR's priority claim for estimated taxes, in proposing a chapter 13 plan the Debtor has the burden of proving that his or her plan complies with the requirements for confirmation, including Section 1325(a)(3) which dictates that a plan must be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3); *In re Carlascio*, 16 Mont. B.R. 429, 437 (Bankr. D. Mont. 1998); *Fidelity & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988).  In addressing good faith in *Carlascio*, this Court noted the BAP's guidance in *Street v. Lawson (In re Street)*, 55 B.R. 763, 764 (9th Cir. BAP 1985) where it held that "the court must be guided by equitable doctrines *and*

9

*must consider such things as the public interest.*"  (Emphasis added).  It is not, in this Court's

view, in the public interest to allow debtors who fail to undertake their burdens under the Internal

Revenue Code or corresponding state revenue laws to enjoy the benefits of the United States

Bankruptcy Code.  Debtor's attempt to repay some obligations by means of a chapter 13 plan

without having filed all required tax returns is contrary to § 1323(a)(5)'s requirement that the

plan be proposed "not by any means prohibited by law."

Pursuant to 11 U.S.C. § 1322(a)(2), priority claims such as the MDOR's estimated tax

claim (Proof of Claim No. 2) must be determined and paid in full to accomplish confirmation.

*See* 1 & 2 Hon. Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 4.11, 7.28 (2nd ed. 1994).  The

evidence shows that the Debtor has not fulfilled the burdens of Chapter 13 relief by failing to

file a Montana income tax return for tax year 2013[11] as required under applicable law, and

therefore this Debtor is not entitled to the benefits of Chapter 13.  The Trustee's objection is

sustained and confirmation of Debtor's Chapter 13 Plan will be denied.

## II.  Trustee's Motion Dismiss with Prejudice.

Dismissal of this case is governed by 11 U.S.C. § 1307, which reads in relevant part:

(c) . . . [O]n request of a party in interest, or the United States trustee and
after notice and a hearing, the court may convert a case under [chapter 13] to a
case under chapter 7 of this title, or may dismiss a case under this chapter,
whichever is in the best interests of creditors and the estate, for cause, including –

\* \* \* \*

(3) failure to file a plan timely under section 1321 of this title;

\* \* \* \*

---

[11]He testified that he is under an extension for tax year 2014.

(5) denial of confirmation of a plan under section 1325 of this title and
denial of a request made for additional time for filing another plan or
modification of a plan ....

*See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 (9th Cir. 2008).

The Trustee moves to dismiss with prejudice on several grounds, including lack of
eligibility under § 109(g)(1) because Weik was a debtor in a prior case pending in the previous
180 days that was dismissed for failure to appear in proper prosecution of the case, abuse of the
bankruptcy system and lack of good faith.  The Trustee also argues that Debtor failed to timely
file his Plan.

Section 109(g)(1) provides that no individual may be a debtor who has been a debtor in a
case pending under Title 11 at any time in the preceding 180 days if – ("1) the case was
dismissed by the court for willful failure by the debtor to abide by order of the court, or to appear
before the court in proper prosecution of the case."  The evidence shows that Case No. 14-60953-
13 was dismissed on September 16, 2014, when Weik failed to pay an overdue filing fee
installment despite being given notice and additional time by notice entered on August 29, 2014.
Weik filed the instant bankruptcy petition on November 13, 2014, which is within 180 days of
the dismissal of No. 14-60953-13.  The Trustee cites no case law, and the Court can find none,
which holds that dismissal of a case for failure to pay a filing fee installment, by itself,
constitutes failure to appear in proper prosecution of the case for eligibility purposes under §
109(g)(1).  Because of the dismissal of this case on other grounds, it is not necessary for this
Court to decide that issue here.

With respect to whether Debtor timely filed his Plan, F.R.B.P. Rule 3015(b) requires that
a plan be filed within 14 days of the petition, although it may be extended "for cause shown and

11

on such notice as the court may direct." The fourteenth day after the date Weik filed his petition

fell on Thanksgiving, Thursday, November 27, 2014. Rule 9006(a)(1)(C), F.R.B.P. provides

that, when a period is stated in days and the last day is on a weekend or legal holiday, the period

continues to run until the end of the next day that is not on a weekend or legal holiday.

Weik filed his Plan on the following Monday, December 1, 2014. If the Court were to

strictly construe Rule 9006(a)(1)(C), the period would run until the end of Friday, November 28,

2014, and Debtor's Plan would be late. However, both Rule 3015(b) and § 1307(c) give the

Court discretion to determine the best interests of creditors and the estate. This Court does not

view Weik's filing of his Plan on the following Monday after the Thanksgiving weekend, by

itself, sufficient cause to dismiss the case.

Turning to good faith, in determining whether a petition or plan is filed in good faith the

court must review the "totality of the circumstances." *Leavitt v. Soto (In re Leavitt)*, 171 F.3d

1219, 1224-25 (9th Cir.1999). The Ninth Circuit did not decide with precision what qualifies as

bad faith, but emphasized that the debtor's conduct must in fact be atypical. *Rosson,* 545 F.3d at

773, quoting *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 1112 at

n. 11, 166 L.Ed.2d 956 (2007). The Ninth Circuit cited its decisions in *Leavitt*, 171 F.3d at 1222-

23 and *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam), that a finding

of bad faith is a finding of fact reviewable for clear error. *Rosson*, 545 F.3d at 774. The

determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for

cause is left to the sound discretion of the bankruptcy court. *In re Leavitt*, 171 F.3d at 1222-23;

*In re Marsh*, 36 F.3d 825, 828 (9th Cir. 1994); *Greatwood v. United States (In re Greatwood)*,

194 B.R. 637, 639 (9th Cir. BAP 9th Cir.1996), *aff'd*, 120 F.3d 268 (9th Cir.1997). Thus, this

Court has the discretion to dismiss this case for lack of good faith.

In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances." *Leavitt*, 171 F.3d at 1224-25; *In re Gress*, 257 B.R. 563, 567, 19 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000); *Eisen*, 14 F.3d at 470. In affirming this Court's dismissal of a Chapter 13 case with prejudice, the district court in this district has adopted the *Leavitt* "totality of the circumstances" list of factors. *In re Kreilick*, 18 Mont. B.R. 419, 421-22 (D. Mont. 2000).

A finding of bad faith does not require fraudulent intent by the debtor. *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D. Mont. 2001); *Gress*, 257 B.R. at 568. This Court noted in *Gress*:

> [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.
>
> *In re Powers*, 135 B.R. 980, 994 (Bankr.C.D.Cal.1991) (relying on *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986)).
>
> The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *In re Leavitt*, 171 F.3d at 1222-23; *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), aff'd, 120 F.3d 268 (9th Cir.1997).
>
> The same factors govern whether Gress filed his petition or his plans in bad faith. *In re Eisen*, 14 F.3d at 470; *In re Leavitt*, 171 F.3d at 1224.

257 B.R. at 568.

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith a bankruptcy court should consider (1) whether the debtor

misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise

filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and

dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether

egregious behavior is present.  The *Leavitt* assessment remains in use in this circuit.  *In re Khan*,

523 B.R. 175, 185 (9th Cir. BAP 2014); *see also In re Cavanagh*, 250 B.R. 107, 114 (9th Cir.

BAP 2000).  After considering the four *Leavitt* factors and the evidence admitted in this case, the

Court concludes that the Debtor did not file his Chapter 13 petition or propose his Plan in good

faith, and that dismissal of the case with prejudice is in the best interests of creditors and the

estate.

The first *Leavitt* factor is whether the debtor misrepresented facts in the petition or plan,

unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner.

The Court finds that the Trustee has satisfied his burden of proof on the first *Leavitt* factor.  Ex.

11 shows that Weik failed to list his prior bankruptcy cases filed within the last 8 years where

required near the top of page 2.  Weik signed his petition stating under penalty of perjury that the

information in the petition is true and correct.   It was not true and correct with respect to his

prior bankruptcy cases, of which the evidence shows there were not less than 5 which he was

required to list.

Weik's excuses are:  that he is pro se; that he was in a rush to file his petition and did not

have time or access to a computer to list his prior cases; that he did the best he could to comply;

and that a case administrator told him that she would list his prior cases.  The Court does not

accept any of these excuses.  It was the Debtor's responsibility, and no other's, to ensure that the

information provided on the petition which he signed was true and correct.

14

In the Ninth Circuit, pro se litigants are not excused from compliance with the rules. *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP 2002).  Ignorance of court rules does not constitute excusable neglect, even if a litigant appears *pro se*.  *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (*quoting Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)  814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds by *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").  Weik's pro se status is no excuse for his failure to list his prior bankruptcy cases on the petition he signed under penalty of perjury.

Debtor's Plan provides for plan payments for a period of only 28 months.  Ex. C.  The applicable commitment period for a plan under § 1325(b)(3)(A)(I) is 3 years unless the plan provides for payment of all unsecured claims over a shorter period.  Debtor's Plan makes no provision for Midway's claim, and Midway was not served with the notice of commencement of the case.  These factors indicate that Weik unfairly manipulated the Code in his Plan.  The first *Leavitt* factor reflects a lack of good faith.

The second *Leavitt* factor is the history of filings and dismissals of prior bankruptcy cases by Weik.  The adjudicative facts from Doc. 24 show:  Four prior bankruptcy cases filed by Weik in Montana; a prior bankruptcy case filed by Weik in Arizona; and two prior bankruptcy cases filed by Weik in the Southern District of Texas.  The evidence does not show that Weik ever received a discharge in his prior bankruptcy cases and his prior chapter 13 cases all were dismissed, including for his default in payments due under a confirmed plan.  The second *Leavitt* factor clearly reflects a lack of good faith from the history of Weik's bankruptcy filings and

15

dismissals.

The third *Leavitt* factor is whether the Debtor intended to defeat state court litigation.  His Schedules and SOFA show the existence of state court litigation, but no evidence exists in the record that Weik filed this case intending to defeat that litigation.  However, Weik and Spaeth each testified that he filed his last several chapter 13 cases in Montana in order to prevent Midway from completing a foreclosure sale of his personal property to apply against the storage debt he owed Midway.  No evidence or argument refers to specific litigation by Midway.  However, Spaeth testified that Midway was pursuing foreclosure against Weik's property located in Midway's storage units, pursuant to Arizona law.  While this factor is not as clear cut as the first two *Leavitt* factors discussed above, on balance the Court concludes that Weik intended to defeat state court litigation when he filed the petition in the instant case to stay the foreclosure sale scheduled by Midway.  The third *Leavitt* factor reflects a lack of good faith.

The last *Leavitt* factor is whether egregious behavior is present.  This Court found egregious behavior by the debtor in *In re Chabot*, 411 B.R. 685, 703-04 (Bankr. D. Mont. 2009), in four areas:  (1) Chabot's failure to make any mortgage payments for 7 years; (2) Chabot's participation in a fraudulent investment scheme; (3) Chabot's tender of bogus promissory notes in payment of the mortgage; and (4) Chabot's failure to file state and federal tax returns in compliance with the law.  411 B.R. at 703-04.

In the instant case, the evidence shows that Weik has not made any payment to Midway for his storage debt since January 2013, and that as of January 8, 2015, Weik owed Midway a total of $8,629.75 in rent.  The record also shows that Weik failed to file his Montana tax return for 2013, resulting in the MDOR's estimated priority claim.

16

Weik's response to Midway has been simply to declare that Midway forgave his storage debt, and therefore he is not required to pay Midway, that he was not required to list Midway as a creditor in his schedules and that Midway was not entitled to payment under his Plan. Midway disagrees, and repeatedly tried to foreclose and sell Weik's belongings pursuant to Arizona law. On each sale date Weik filed another bankruptcy petition to stop the sale with the automatic stay. All of his prior bankruptcy cases ultimately were dismissed.

Weik listed Midway as a creditor in some of his prior Montana bankruptcy cases. Ex. 8, 9. The evidence shows that he never paid Midway. He offered no written documentation from Midway waiving payment of its claim. Weik's only evidence that he does not owe Midway was its offer that he come pick up his property by a certain date, in return for the forgiveness of the debt. However, Weik did not accept that offer with performance. He did not pick up his property by the required date and, therefore, Weik has no cognizable claim of satisfaction or waiver of payment by Midway. Certainly, Midway's conduct in scheduling repeated foreclosure sales does not reflect a waiver of payment by Midway.

Debtors are required to file schedules of assets and liabilities as prescribed by the appropriate Official Forms. Rule 1007(b)(1)(A). The directions at the top of Schedule F on Ex. 11 require a debtor to state the name and address of all entities holding unsecured claims without priority against the debtor or the property of the debtor and to indicate whether a claim is contingent, unliquidated, or disputed. Weik testified that he is entitled to pick and choose what to include in his Schedules. He is wrong.

A "debt" is "liability on a claim." 11 U.S.C. § 101(12). "Claim" means – "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent,

17

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ...." § 101(5).

*See Davis v. U.S. Bank (In re Davis)*, __F.3d __, 2015 WL 662001, *2 (9th Cir.). "Claim" has the

broadest available definition.  *Id.,* quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991);

*Pa. Dept of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990).  The broad definition of claim

means that a claim remains a "debt" so long as it is enforceable against either the debtor or the

debtor's property after a prior discharge from personal liability.  *Davis*, 2015 WL 662001 at *4.

The evidence does not show that Weik received a discharge of personal liability to

Midway and Midway retains its rights to his personal property under Arizona law.  Weik's

repeated bankruptcy filings on the date of auction sale to stay Midway from satisfying its claim,

followed by Weik's failure to list Midway in his Schedules, is in this Court's view egregious

conduct.  Additional egregious conduct is shown by the evidence that Weik failed to list his car,

truck, and ownership of a corporation in his Schedules.[12]

Consideration of the four *Leavitt* factors show that they each reflect bad faith by the

Debtor in filing his Chapter 13 petition.  The Court finds that Weik's conduct satisfies the

*Marrama* requirement that it be "atypical."  127 S.Ct. at 1112 n.11; *Rosson*, 545 F.3d at 773.

What remains to be determined is the remedy.

"A dismissal with prejudice bars further bankruptcy proceedings between the parties and

is a complete adjudication of the issues."  *In re Leavitt*, 171 F.3d at 1223-24; *In re Tomlin*, 105

F.3d 933, 936-37 (4th Cir. 1997).  In *Tomlin,* the United States Court of Appeals for the Fourth

---

[12]Ex. 11 and Doc. 10 do not include a declaration under penalty of perjury signed by
Weik stating that he has read his schedules and that they are true and correct to the best of his
knowledge, information and belief.  Such a signed declaration is required by Rule 1007(b)(1)(A)
and Official Form 6, and Weik's failure to comply weighs against him.

Circuit describes a dismissal order that bars subsequent litigation as a "severe" and "drastic" sanction which is limited to "extreme situations:" "[g]enerally, only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors – for example, concealing information from the court, violating injunctions, or filing unauthorized petitions – will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts." *In re Tomlin*, 105 F.3d at 937 (citing cases).

The evidence in this case shows that Weik concealed information from the Court when he failed to list in his Schedules:  His vehicles; his interest in a corporation; and Midway's claim. The Court finds that Weik's behavior has prejudiced Midway, a creditor.  Midway has been prejudiced by Weik's repeated bankruptcy filings on the date it scheduled foreclosure sales and his continued use of Midway's storage space without paying for it.  Weik's position regarding Midway is that it has forgiven the debt.  That position is denied by Midway, disproved by the record and is rejected by the Court.

The Court further concludes that Weik does not intend either to pay Midway or to permit Midway to go through with its foreclosure sale of his property to pay toward his debt pursuant to Arizona law.  If this case were to be dismissed without prejudice, Midway would reschedule its foreclosure sale and Weik in all likelihood would file another bankruptcy petition in this or another court in order to stay the sale, with similar carelessness and defects reflected in his petition and Schedules filed in this case.  This Court finds and concludes that the evidence in this case reflects extreme circumstances which justify the drastic sanction of dismissal with prejudice with a two-year prohibition against refiling.  *In re Leavitt*, 171 F.3d at 1223-24; *In re Tomlin*, 105 F.3d at 936-37.

19

## CONCLUSIONS OF LAW

1. This Court has exclusive jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtor's Plan and the Chapter 13 Trustee's Motion to Dismiss with Prejudice are core proceeding under 28 U.S.C. § 157(b)(2) regarding confirmation of the Debtor's Plan and administration of this case.

3. Debtor failed his burden of proving that his Plan complies with the requirements for confirmation in § 1325(a).

4. Debtor failed to satisfy his burden to show that he filed his petition and proposed his Chapter 13 Plan in good faith in satisfaction of § 1325(a)(3), after consideration of the four factor test from *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir.1999).

5. The evidence reflects extreme circumstances which justify the drastic sanction of dismissal of this case with prejudice with a two-year prohibition against David Weik refiling for bankruptcy relief in any district. *In re Leavitt*, 171 F.3d at 1223-24.

**IT IS ORDERED** a separate Order shall be entered denying confirmation of Debtor's Chapter 13 Plan; overruling the Debtor's objection and granting the Trustee's Motion to Dismiss with Prejudice, and dismissing this case with prejudice with a two-year prohibition against the filing of a petition for bankruptcy relief in any district by the above-named Debtor David Weik.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

20